UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

**Icon Health & Fitness, Inc.,**
**a Delaware corporation,**

        **Plaintiff,**

v.

**Octane Fitness, LLC,**
**a Minnesota corporation,**

        **Defendant**.

Civil No. 09-CV-319 (ADM/SRN)

**REPORT & RECOMMENDATION**

---

C.J. Veverka, Workman Nydegger, 60 East South Temple, Suite 1000, Salt Lake City, Utah 84111; Jeannette M. Bazis, Greene Espel PLLP, 200 South Sixth Street, Suite 1200, Minneapolis, Minnesota 55402, for Plaintiff

Matthew L. Cutler, Harness, Dickey & Pierce, PLC, 7700 Bonhomme Avenue, Suite 400, St. Louis, Missouri 63105, for Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter is before the Court on Defendant's Motion to Strike and for Partial Summary Judgment (Doc. No. 92). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). (See Order of 12/2/09, Doc. No. 97.) For the reasons set forth herein, the Court recommends that Defendant's Motion to Strike and for Partial Summary Judgment be denied.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Icon Health & Fitness, Inc. ("Icon") originally filed this patent infringement suit against Defendant Octane Fitness, LLC ("Octane") in California in April 2008. The case was transferred to Minnesota in February 2009. Both Icon and Octane manufacture fitness

1

equipment, including elliptical exercise machines. Plaintiff alleges that Defendant Octane has infringed and continues to infringe one or more of the claims of United States Patent No. 6,019,710 ("the '710 Patent"), entitled "Exercising Device with Elliptical Movement," owned by Icon.[1] (See Complaint ¶¶ 12-17.) Specifically, Plaintiff alleges that Octane's manufacture and sale of the Octane Fitness Q47 Series exercise device is one example of Defendant's infringement. (Complaint ¶17.) Octane denies the claims of infringement and responds that the claims of the '710 Patent cannot be construed to cover its elliptical equipment. (Answer ¶¶11.)

On April 1, 2009, this Court entered the Pretrial Scheduling Order setting forth the case management schedule. (Pretrial Scheduling Order of 4/01/09, Doc. No. 75.) The Pretrial Scheduling Order established a period for discovery, requiring Plaintiff to serve upon Defendant its claim chart by July 23, 2009, identifying which claim(s) of its patent were allegedly infringed, which specific products or methods of Defendant allegedly infringed the patent, and the basis for the contention that each element of each identified claim was found in each allegedly infringing product. (Id.) The Pretrial Scheduling Order set a January 2, 2010 deadline for the completion of fact discovery. (Id.) Pursuant to the parties' stipulation, the Pretrial Scheduling Order was modified on December 14, 2009, extending the deadline for the completion of fact discovery until January 29, 2010, the initial exchange of expert reports until March 1, 2010, and completion of all expert discovery until May 3, 2010. (Order of 12/14/09 Modifying Pretrial Scheduling Order, Doc. No. 105.)

---

[1] Initially, Plaintiff also alleged the infringement of another patent, United States Patent No. 5,104,120 ("the '120 Patent") (Complaint ¶¶ 13, 16-21), but based on the stipulation of the parties, the Court subsequently dismissed all claims relating to the '120 Patent. (Order of 5/29/09, Doc. No. 78.)

The parties dispute the progress of discovery prior to the date on which Plaintiff's Claim Chart was due. Icon served discovery requests upon Octane on April 6, 2009. (Pl.'s Mem. Opp'n Def.'s Mot. Strike & Partial Summ. J. at 2.) In late June 2009, Icon requested production of all relevant documents from Octane within one week's time, by July 3, 2009. (Id.; Email of 6/26/09 from C. Hall to M. Cutler, Ex. A to Hall Decl., Doc. No. 101-1.) Icon argues, however, that over 99% of Octane's document production occurred after Plaintiff's Claim Chart had been served in late July. (Pl.'s Mem. at 2, 5; Table, Ex. E to Hall Decl.)

Octane responded to Icon's demand that all responsive documents be produced by July 3, 2009, by noting that it had initially attempted to respond to Plaintiff's discovery requests related to the '120 Patent, but had had to reevaluate its production in light of the May 20, 2009 dismissal of claims relating to the '120 Patent. (Letter of 6/29/09 from M. Cutler to C. Hall, Ex. B to Pl.'s Mem.) Nevertheless, Octane argues that it produced drawings of both the Q45 and Q47 families of elliptical machines by July 9, 2009 and told Icon that if it needed any other information to complete the claim chart, it would expedite the production. (Def.'s Mem. Supp. Mot. Strike & Partial Summ. J. at 2.) Icon claims that on July 13, 2009, it requested information regarding specific documents and that Octane refused to substantively respond. (Pl.'s Mem. at 3; Email of 7/13/09 from C. Hall to R. Soriano, Ex. G to Hall Decl.; Email of 7/14/09 from R. Soriano to C. Hall, Ex. H to Hall Decl.)

Icon served its Claim Chart on the due date of July 23, 2009, alleging that Octane's Q47e elliptical machine, "and all other Octane elliptical machines incorporating the same or similar features of the Q47e," infringed the asserted claims. (Pl.'s Claim Chart, Ex. 6 to Def.'s Mem. Supp. Mot. Strike & Partial Summ. J., Doc. No. 90-6.) Specifically, Icon listed several allegedly

infringing Octane products, including Octane's Q45, Q45e and Q45ce elliptical products. Icon did not, however, note any differences in the internal structures of the Q45 and Q47 products. (Pl.'s Claim Chart, Ex. 6 to Def.'s Mem.)

On August 7, 2009, Octane objected to Plaintiff's Claim Chart. Octane argued that the linkages of the Q45 and Q47 products, which allow a user's feet to travel in an elliptical path, are different, but Icon's Claim Chart only addressed the linkage relating to the Q47 machines. (Letter of 8/7/09 from M. Cutler to C. Hall, Ex. 7 to Def.'s Mem.) On August 13, 2009, Icon requested an in-person inspection of the Q45 and Q47 elliptical machines at Octane's facilities (Pl.'s Req. Entry for Inspection, Ex. 8 to Def.'s Mem., Doc. No. 90-8), and the inspection occurred on September 2, 2009. (Pl.'s Mem. at 3.)

Icon asserts that between July 2, 2009 and September 18, 2009, Octane produced the documents identifying the structural differences between the linkages of the Q45 and Q47 models. (Id.) On October 23, 2009, without seeking leave of Court, Icon served its Supplemental Claim Chart, applying the analysis disclosed in its initial Claim Chart to the mechanical differences found in Octane's Q45 products. (Pl.'s Supp'l Claim Chart, Ex. 11 to Def.'s Mem.)

Octane then filed the instant motion, seeking to strike Plaintiff's Supplemental Claim Chart and for the entry of partial summary judgment, finding that Octane's Q45 family of elliptical exercise machines do not infringe any claim of Icon's '710 Patent. Octane argues that Plaintiff failed to seek the Court's permission to modify the Pretrial Scheduling Order and that Plaintiff's supplementation was untimely – served three months after the deadline for service of Plaintiff's Claim Chart. Moreover, even if Icon had sought the Court's leave to supplement the

Claim Chart, Octane argues that Icon could not demonstrate the showing of good cause required for modification of a scheduling order. Octane argues that Icon should have investigated the structure of the elliptical machines before filing suit and certainly before serving its Claim Chart. (Def.'s Mem. at 6.) In addition, Octane maintains that the products in question were widely available in the marketplace for a much earlier, more timely inspection by Icon. (Id. at 1-2; 7-8.) Accordingly, Octane asks the Court to strike Plaintiff's Supplemental Claim Chart and grant summary judgment in favor of Defendant on the issue of whether the Q45 products infringe the '710 Patent.

In response, Octane asserts that the Pretrial Scheduling Order did not impose a requirement that it seek leave of court in order to supplement Plaintiff's Claim Chart. (Pl.'s Mem. at 1-2.) Moreover, Octane argues that even if it was required to obtain leave to supplement its Claim Chart, it has demonstrated the necessary good cause to do so. Icon asserts that it was hindered by Octane's failure to provide full discovery before the July 23, 2009 Claim Chart deadline and that its Supplemental Claim Chart is based on Defendant's production of documents that occurred after that initial deadline. (Id. at 1-2; 7.)

Octane also asserts that its Supplemental Claim Chart does not seek to add any new product or assert any additional claims. Rather, it merely supplements its disclosure by applying the analysis disclosed in its initial Claim Chart to the mechanical differences found in the Q45 family of products. Icon contends that at the time of its initial Claim Chart, it had purchased and disassembled a Q47 product as part of its pre-filing investigation and it believed that all of the accused products had the same infringing internal structure. (Hall Dec. at ¶¶ 13-14.) Prior to July 23, 2009, however, Icon argues that Octane had never produced any documents clearly

5

identifying the Q45 products as having a different internal mechanism than the Q47 products. (Id. at ¶ 16.)

## II. DISCUSSION

The Court's Pretrial Scheduling Order states that it "may be modified only upon formal motion and a showing of good cause as required by Local Rule 16.3." Local Rule 16.3(a) provides that a pretrial discovery schedule shall not be extended or modified except upon written motion and a showing of good cause. Federal Rule of Civil Procedure 16(b)(4) likewise provides, "A schedule may be modified only for good cause and with the judge's consent."

In considering what constitutes "good cause" in the context of modifying patent infringement contentions, courts have examined such factors as the relevance of newly-discovered prior art, the plaintiff's diligence in amending its contentions, whether the request to amend is motivated by gamesmanship, the difficulty of locating prior art, and whether the opposing party will be prejudiced by the amendment. See Network Appliance Inc. v. Sun Microsystems Inc., Nos. C-07-06053 EDL, C-07-05488 EDL, 2009 WL 2761924 at *1 (N.D. Cal. Aug. 31, 2009); O2 Micro International Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1366-68. (Fed. Cir. 2006). Courts have approached the amendment of claim charts more conservatively than the amendment of pleadings in general, underscoring a philosophy designed to prevent a "shifting sands" approach to claim construction, LG Electronics, Inc. v. Q-Lity Computer Inc., 211 F.R.D. 360, 367 (N.D. Cal. 2002), and to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." O2 Micro International, 467 F.3d at 1366, n. 12 (citation omitted).

If a party wishes to supplement a claim chart, that party should first seek the Court's

permission. The Pretrial Scheduling Order, the Local Rules and the Federal Rules all require permission for modification of a scheduling order. Here, however, Icon's failure to seek permission can be excused because Icon can demonstrate good cause to supplement its claim chart. First, Icon's supplementation does not seek to add any new products which are alleged to infringe. Second, Icon seeks only to supplement its claim chart – not to add any new or additional theories of infringement. The supplementation proposed is entirely based on discovery received after the filing of its first claim chart. Disallowing Plaintiff's Supplemental Claim Chart for its procedural failure to seek the Court's leave would constitute a draconian sanction and the Court instead addresses why Icon meets the good cause standard necessary to modify the Pretrial Scheduling Order.

A plaintiff's diligence in amending its infringement contentions is central to a finding of good cause. See O2 Micro International, 467 F.3d at 1367. Icon served discovery in April 2009 and both parties have submitted ample evidence of on-going communications between counsel in an effort to expedite discovery. Icon was mindful of the approaching July 23, 2009 claim chart deadline and requested production of documents prior to the deadline. (See email of 6/26/09 from C. Hall to M. Cutler, Ex. A to Hall Decl.; email of 7/21/09 from C. Hall to R. Soriano, Ex. D to Hall Decl.) In responding to Icon's discovery requests, Octane may have had to switch gears due to the dismissal of Icon's '210 claims from the lawsuit in late May. This may explain why Octane produced a large percentage of discovery to Icon after the July 23, 2009 Claim Chart deadline. In any event, Icon's July 23, 2009 Claim Chart alleged that Octane's Q45 and Q47 product lines infringed the '710 Patent.

Octane's large document production then occurred. Counsel for Icon avers that it was not

until after Icon's Claim Chart was due that Octane disclosed that its Q45 product family and its Q47 product family had different internal mechanisms. (Hall Decl. ¶ 17.) Icon then inspected the Q45 and Q47 products in early September 2009. Based on this record, the Court concludes that Icon acted with the requisite diligence required for establishing good cause to supplement its claim chart. There is no evidence that Icon employed gamesmanship in order to gain some tactical advantage or delayed issuing its discovery requests. Instead, the record demonstrates that the parties attempted in good faith to obtain and produce the necessary discovery.

While the Q45 and A47 models may involve differences in structure, or linkages, Icon believes that the Q47 line infringed the same patent claims for the same reasons as set forth in its original Claim Chart. Icon's original Claim Chart identified Octane's Q45 products as infringing and also identified the claims those products allegedly infringe. Icon's Supplemental Claim Chart conforms with the evidence and does seek to add any new products, assert any additional patent claims or set forth any new theories of infringement. The Court therefore finds this situation distinguishable from that in <u>O2 Micro International</u>, 467 F.3d at 1369, in which the omitted material was significantly different.

Although Icon could have sought the Court's permission to supplement and could have moved more expeditiously in serving its Supplemental Claim Chart, the Court is unpersuaded that this constitutes sufficient reason to deny Icon's supplementation, particularly in the absence of any prejudicial impact on Octane. The Court recognizes that the question of good cause, in general, does not turn on the existence or absence of prejudice to the non-moving party, <u>Scheidecker v. Arvig Enterprises, Inc.</u>, 193 F.R.D. 630, 632 (D. Minn. 2000) (citing <u>Luigino's Inc. v. Pezrow Cos.</u>, 178 F.R.D. 523, 525 (D. Minn.1998), but other courts addressing similar

proposed amendments in the patent litigation context have considered the effect of prejudice to the defendant.  See Network Appliance, 2009 WL 2761924 at *5-7 (denying certain amendments as prejudicial where cases were at an advanced stage, with fact discovery closed and expert reports exchanged); Golden Hour Data Systems, Inc. v. Health Services Integration, Inc., Nos. C 06-7477 SI, 2008 WL 2622794 (N.D. Cal. 2008) at *4 (allowing certain amendments upon finding that, *inter alia*, opposing party was on notice of the substance of the proposed amendments, three additional months of fact discovery remained and expert discovery had not yet begun); O2 Micro International, 467 F.3d at 1366-68 (having concluded that plaintiff did not diligently move to amend its contentions, the court saw no reason to address the question of prejudice to the defendant).  Thus, this Court observes that Octane is not prejudiced by permitting the claim chart supplementation.  Fact discovery has only just concluded as of January 29, 2010 and much discovery remains.  (Order of 12/14/09 Modifying Pretrial Scheduling Order, Doc. No. 105.)  The completion of expert discovery is approximately three months away, and as of the date of the hearing on this motion, no fact depositions had been taken. Octane's counsel argued at the hearing on this motion that once infringement contentions are served, the parties then turn to claims construction and Octane has already filed its Markman hearing submissions.  That problem, however, is cured by allowing Defendant to perform another prior art search or to rebrief its Markman pleadings.  The Court finds that, to the extent Defendant is prejudiced by permitting Icon to supplement its Claim Chart, Defendant will have a full opportunity to respond accordingly.

For the reasons set forth herein, the Court therefore recommends the denial of Defendant's Motion to Strike Plaintiff's Supplemental Claim Chart.  Octane's Motion for

Summary Judgment is dependent on the Court's ruling on the Motion to Strike. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also e.g. Myers v. Lutsen Mountains Corp., 587 F.3d 891, 893 (8th Cir. 2009). Because the Court has recommended the denial of Octane's Motion to Strike Plaintiff's Supplemental Claim Chart, the pleadings demonstrate that there is a genuine issue of material fact with respect to the alleged infringement by the Q45 product line on the '710 Patent. The Court therefore recommends the denial of Defendant's Motion for Partial Summary Judgment.

In light of this ruling, the parties should meet and confer about proposed deadlines in the case. If there is disagreement about proposed deadlines, the parties are welcome to contact the Court to resolve any dispute.

**THEREFORE, IT IS HEREBY RECOMMENDED THAT:**

Defendant's Motion to Strike and for Partial Summary Judgment (Doc. No. 92) be **DENIED**.

Dated:   February 4, 2010

                                        s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **February 19, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.