# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Icon Health & Fitness, Inc.,
a Delaware corporation,

                Plaintiff,

     v.

                               **MEMORANDUM OPINION
                               AND ORDER**

                               Civil No. 09-319 ADM/SER

Octane Fitness, LLC,
a Minnesota limited liability company; and
Nellie's Exercise Equipment, Inc.,
a California corporation,

                Defendants.

_____

C.J. Veverka, Esq., David R. Wright, Esq., H. Craig Hall, Jr., Esq., Larry R. Laycock, Esq., and Mark W. Ford, Esq., Workman Nydegger, Salt Lake City, UT; and Jeanette M. Bazis, Esq., and Lawrence M. Shapiro, Esq., Greene Espel, P.L.L.P., Minneapolis, MN, on behalf of Plaintiff.

Matthew L. Cutler, Esq., Rudolph A. Telscher, Jr., Esq., Harness, Dickey & Pierce, P.L.C., St. Louis, MO; and Michael A. Lindsay, Esq., Dorsey & Whitney, L.L.P., Minneapolis, MN, on behalf of Defendant Octane Fitness, LLC.

_____

## I.  BACKGROUND

This is a patent infringement case concerning the linkage systems on elliptical exercise machines.  On December 22, 2010, the Court construed the disputed claims of U.S. Patent No. 6,019,710 (the "'710 patent") [Docket No. 144].  Based on these constructions, on June 17, 2011, the Court issued a Memorandum Opinion & Order granting summary judgment of non-infringement in favor of Defendant Octane Fitness, LLC ("Octane") [Docket No. 187].  Plaintiff Icon Health & Fitness, Inc. ("Icon") appealed these rulings to the Federal Circuit [Docket No. 200].  The facts are set forth more fully in the Court's prior orders, and will not be repeated here.

Octane, the prevailing party on summary judgment, now moves for an award of attorney's fees under 35 U.S.C. § 285.   Icon opposes the motion.   For the following reasons, Octane's motion is denied.[1]

## II.  DISCUSSION

A court "may award reasonable attorney fees to the prevailing party" in exceptional patent cases, both to compensate the prevailing party for its litigation expenses, and also to deter the filing of baseless infringement suits.  See 35 U.S.C. § 285; Automated Bus. Cos. v. NEC America, Inc., 202 F.3d 1353, 1355 (Fed. Cir. 2000); Mathis v. Spears, 857 F.2d 749, 753 (Fed. Cir. 1988).  A two-step analysis is required.  Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003).  First, the prevailing party must establish by clear and convincing evidence that the case is exceptional; if so, the court may award fees as a matter of discretion. Id.  Courts award attorney fees to prevailing accused infringers only when "necessary to prevent 'a gross injustice' to the accused infringer."  Id. at 1329 (citations omitted).  The second step need not be reached because this case is not exceptional.

"[A]bsent misconduct during patent prosecution or litigation," a case is exceptional "only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.'"  iLOR, LLC, v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011) (quoting Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)).  Both

---

[1] Octane has moved for leave to file a reply brief [Docket No. 213], and has attached the proposed brief as an exhibit.  The motion will be denied.  The arguments set forth in the proposed reply are largely repetitive of those presented in Octane's main brief, and any new arguments are without legal support.  Octane's decision to seek advice from its counsel is wholly irrelevant to the question of whether Icon's conduct makes this case exceptional under 35 U.S.C. § 285.

requirements must be established by clear and convincing evidence.  Brooks Furniture, 393 F.3d at 1382.  If either requirement is not met, the case is not exceptional.  Id. at 1381.  Here, neither requirement is met.

Patent litigation is objectively baseless when a party's assertions are "so unreasonable that no reasonable litigant could believe [they] would succeed."  iLOR, 631 F.3d at 1378.

This determination "requires an objective assessment of the merits" based on the record made in the infringement proceedings.  Id. at 1377-78.  The patentee's "[s]tate of mind is irrelevant" to this objective inquiry.  Id. at 1377.  So is the fact that the patentee's arguments were unsuccessful.  "Claim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language."  iLOR, 631 F.3d at 1379 (internal quotation omitted).  A proposed claim construction is not frivolous if not precluded by the language of the claim or the disclosures in the specification.  See id. at 1378.  Similarly, the mere fact that a court found no infringement is not sufficient to establish the action was objectively baseless.  See MTS Sys. Corp. v. Hysitron Inc., 639 F. Supp. 2d 996, 1002 (D. Minn. 2009), aff'd, 370 Fed. Appx. 111 (Fed. Cir. 2010) (unpublished).

Octane argues Icon's infringement action was objectively baseless because the Court rejected Icon's arguments that (1) several elements of Octane's machines collectively comprised a "stroke rail" which "extends from a foot rail to a frame;" (2) "linear reciprocating displacement" did not require movement in a linear path; and (3) several elements of Octane's machines infringed the '710 patent literally and under the doctrine of equivalents.  In Octane's view, the Court's rulings should have been a foregone conclusion to anyone who visually

inspected its machines' linkage system, making Icon's infringement assertions "unreasonable and unsupportable." Octane Mem. [Docket No. 196] at 15.

The Court does not agree that the conclusions were so easily reached. Icon argued that several parts of Octane's linkage system collectively comprised a "stroke rail" that "extend[ed] from a foot rail to a frame," as required by claim 1(c). See '710 Patent [Docket No. 158, Ex. 1] at col. 7 ll. 16-19. "Stroke rail" has no definition in the patent or in the industry, but the specification clearly indicates it is comprised of more than one part. Indeed, the meaning of "stroke rail" was so unclear that for several months Octane conceded its Q47 machine had a "stroke rail" – until it withdrew that concession in an amended claim construction chart. Icon's argument that Octane's machines had a "stroke rail," although not ultimately persuasive, was not frivolous.

 Icon also argued for a construction of the term "linear reciprocating displacement" in claim 1(d) that did not require "movement along a linear path." Octane argues such a construction was at odds with both the plain meaning of "linear," the intrinsic evidence of the patent, and the notice of allowance, which identified "linear reciprocating displacement" as a reason why the patent was allowable over prior art. Icon's proposed construction was rejected.

Although the Court remains confident in its construction of claim 1(d), the rejected construction is not frivolous. Claim 1(d) is a means-plus-function claim, claiming the function of "connecting each stroke rail to the frame such that linear reciprocating displacement of the first end of each stroke rail results in displacement of the second end of each stroke rail in a substantially elliptical path." '710 Patent at col. 7 ll. 20-24. Icon argued that the "means for connecting" element needed only to be "capabl[e] of converting 'linear reciprocating

displacement' into elliptical motion." Icon Claim Constr. Brief [Docket No. 131] at 23.  Icon

also argued that the "very slight arcuate motion" present in Octane's machine was substantially

equivalent to linear motion, and that "the same mechanism" which converted the slight arcuate

motion into elliptical motion "would also convert precisely linear motion at the first end of the

stroke rail to elliptical motion at the second end of the stroke rail."  Id. at 24 (emphasis omitted).

In support of its argument, Icon relied on several Federal Circuit decisions suggesting that

means-plus-function claims required structure merely capable of performing the function, rather

than structure that actually performed the function.  Id. at 25.  Relying on expert testimony and

technical dictionaries, Icon also argued the word "displacement" would not have been

understood by those skilled in the art to require movement along a straight-line path.  Id. at 27-

28.  Although ultimately unsuccessful, Icon's arguments were not objectively baseless.

At the summary judgment stage, Icon argued that claim 1(d) was literally infringed

because structures in Octane's machine "convert linear reciprocating displacement at the first

end of the actuator-casting stroke rail into a 'substantially elliptical path' at the second end of the

stroke rail."  Icon Mem. Opp. S. J. [Docket No. 175] at 21.  In support, Icon relied on page 7 of

its expert's report, which employed the proposed construction of "linear reciprocating

displacement" that was rejected by the Court.  Id.  Icon now characterizes this assertion as "not

an argument that Octane's machines had 'linear reciprocating displacement' but rather an

argument that the claim did not require a structure that created linear reciprocating displacement,

only a structure that performed the claimed 'connecting' function."  Icon Mem. Opp. Fees

[Docket No. 205] at 7 n.1.  This assertion suggests Icon did not intend to be misleading in its

summary judgment argument, but merely to reargue a point that had been previously decided

against it.  Although arguably confused and repetitive, and ultimately unavailing, Icon's

summary judgment argument was not objectively baseless.

In the context of design patents, a visible difference in design may foreclose an

infringement action.  See Brooks Furniture, 393 F.3d at 1383.  Here, however, a visible

difference is not determinative.  Infringement is determined by comparing the accused devices to

the properly-construed claims and specifications of the patent.  See IMS Tech., Inc. v. Haas

Automation, Inc., 206 F.3d 1422, 1429 (Fed. Cir. 2000).  Icon represents, and the Court has no

reason to doubt, that it purchased and inspected a Q47 machine prior to filing suit, and that it

secured opinions from experts and counsel that the machine infringed its patent.  The visible

differences between the linkage systems of both machines did not make it unreasonable to rely

on testing and opinions as to infringement.  While Icon's arguments on claim construction and

infringement proved to be unpersuasive, again, the arguments are not objectively baseless.

Because Icon's case was not objectively baseless, the inquiry could end here.  However,

Octane's argument that Icon brought suit in bad faith will be briefly addressed.  Subjective bad

faith means "the plaintiff's case must have no objective foundation, and the plaintiff must

actually know this."  iLOR, 631 F.3d at 1377.  For example, a patentee who had "actual

knowledge that the [infringement] suit was baseless" and also "complete[ly] fail[ed] to conduct

pre-suit investigation in the form of appropriate testing to establish infringement" may

demonstrate subjective bad faith.  See MTS Sys., 639 F. Supp. 2d at 1002 (citing Eltech Sys.

Corp. v. PPG Indus., Inc., 903 F.2d 805, 808 (Fed. Cir. 1990)).  Similarly, a patentee who

stipulated that the accused device did not infringe, but refused to dismiss the suit, and opposed

defendant's motion for summary judgment of noninfringment, so that it might obtain discovery

about defendant's other potentially infringing products, was acting in bad faith.  Automated Bus.

Cos., 202 F.3d at 1354.  By contrast, evidence that a patentee has sought reasonable expert evaluation of the accused device, and opinions of counsel, weighs against a finding of subjective bad faith.  See Brooks Furniture, 393 F.3d 1383.  Subjective bad faith does not exist where infringement can reasonably be disputed. Id. at 1384.  "Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith."  Id.

Here, as evidence of bad faith, Octane offers (1) an email exchange between two Icon sales executives suggesting the litigation was undertaken as a matter of commercial strategy; and (2) the fact that Icon is a bigger company which never commercialized the '710 patent.  These circumstances do not establish by clear and convincing evidence that Icon undertook its lawsuit in bad faith.

The emails tend to show that in late August 2008, some five months after this action was originally filed in the Central District of California [Docket No. 57, Ex. 1], an Icon employee with the title of Vice President of Global Sales reported to two other employees, "We are suing Octane.  Not only are we coming out with a great product to go after them, but throwing a lawsuit on top of that."  Octane Mem. [Docket No. 196] at 1.  The next day, one of the recipients forwarded the email to a third party, with the message, "Just clearing the way and making sure you guys have all your guns loaded! Look below!"  Id. at 2.  In September 2009, more than a year later, the sender of the original message apparently responded to an inquiry from the sender of the second message ("Subject: RE: I heard we are suing Octane!") stating, "Yes – old patent we had for a long time that was sitting on the shelf.  They are just looking for royalties."  Id.

Viewed in the light most favorable to Octane, these remarks are stray comments by employees with no demonstrated connection to the lawsuit.  The statements do not reflect advice

to Icon by its counsel or experts, nor are they evidence of Icon's official position on the merits of the lawsuit.  A company salesman's opinion of a lawsuit does not tend to prove that the company's leadership and counsel pursued the lawsuit in bad faith.  There is no evidence the remarks were ever seen, much less adopted by, those in a position to decide whether to pursue an infringement action against Octane.

Even if the emails suggest Icon commenced this lawsuit to gain a competitive advantage against a smaller company, that fact does not make the lawsuit frivolous.  "A duly granted patent is a grant of the right to exclude all infringers, not just those of comparable size." Brooks Furniture, 393 F.3d at 1384.  Neither is it relevant that Icon never commercialized the '710 patent.  Simply bringing suit to gain a competitive advantage is not evidence of bad faith. "Enforcement of patent rights that are reasonably believed to be infringed does not entail special penalty when the patentee is unsuccessful." Id.  In sum, even if this action were objectively baseless – which it is not – neither the email exchange, nor the relative size of the parties, nor Icon's decision not to commercialize the '710 patent, are clear and convincing evidence of subjective bad faith on Icon's part.  This case is not exceptional, and an award of attorney's fees is not warranted.

### III.  ORDER

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that Octane's motion for an award of attorney's fees [Docket No. 194] is

**DENIED**.  Octane's motion for leave to file a reply brief [Docket No. 213] is also **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 6, 2011.