UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Icon Health & Fitness, Inc.,

        Plaintiff,

  v.

                              **MEMORANDUM OPINION**
                              **AND ORDER**

                              Civil No. 09-319 ADM/SER

Octane Fitness, LLC,

        Defendant.

_____

Larry R. Laycock, Esq., Maschoff Brennan, Salt Lake City, UT; and Lawrence M. Shapiro, Esq., and X. Kevin Zhao, Esq., Greene Espel, PLLP, Minneapolis, MN, on behalf of Plaintiff.

Rudolph A. Telscher, Jr., Esq., and Daisy Manning, Esq., Harness, Dickey & Pierce, P.L.C., St. Louis, MO, on behalf of Defendant.
_____

## I. INTRODUCTION

On April 1, 2015, the undersigned United States District Judge heard oral argument on Defendant Octane Fitness, LLC's ("Octane") Renewed Motion for Attorney's Fees and Costs [Docket No. 260] and Motion to Strike or, in the Alternative, Motion to Reopen Discovery [Docket No. 272]. Octane argues that it is entitled to attorney's fees under § 285 of the Patent Act based on the new standard announced by the Supreme Court in this case. See Octane Fitness, LLC v. Icon Health & Fitness, Inc., 134 S.Ct. 1749 (2014). The Federal Circuit has remanded the case to this Court for consideration of whether, under the newly-announced standard, this is an exceptional patent case that warrants an award of attorney's fees. See Icon Health & Fitness, Inc. v. Octane Fitness, LLC, 576 F. App'x 1002 (Fed. Cir. 2014). Plaintiff Icon Health & Fitness, Inc. ("Icon") opposes the motions. For the reasons set forth below, the

Court finds this case to be exceptional under § 285 and grants the renewed motion for attorney's fees and costs. The motion to strike is denied as moot.

## II. BACKGROUND[1]

In this patent infringement case, Icon alleged that Octane infringed Icon's U.S. Patent No. 6,019,710 (the "'710 patent"). See Telscher Decl. [Docket No. 262] Ex. S ("'710 patent"). The '710 patent covers an elliptical machine designed to minimize floor space needed and allow for adjustable stride length. Although the '710 patent was issued in 2000, it was never commercialized due to the lack of buyer interest and the complexity and expense of the machine. Id. Ex. D ("Dalebout Dep.") 28:15–31:4; 34:23–36:14.

Icon alleged that two models of elliptical machines manufactured and sold by Octane, the Q45 and Q47, infringed claims 1-5, 7, and 9-11 of the '710 patent. These claims are all directed to the elliptical machine's linkage system that connects the foot rail to the frame via the "stroke rail." Octane denied the infringement allegations and counterclaimed for declaratory judgment of non-infringement, invalidity, and unenforceability of the '710 patent.

On December 22, 2010, this Court issued a Claim Construction Order [Docket No. 144]. Thereafter, on June 17, 2011, this Court granted summary judgment of noninfringement to Octane. See Mem. Op. & Order [Docket No. 187] ("Summary Judgment Order).

In July 2011, Octane moved for an award of attorney's fees under § 285 of the Patent Act, which authorizes a court to award reasonable attorney's fees to the prevailing party in

---

[1] The full background of this patent infringement case is set forth in the Court's Memorandum Opinion and Order dated December 22, 2010 [Docket No. 144] ("Claim Construction Order"), Memorandum Opinion and Order dated June 17, 2011 [Docket No. 187] ("Summary Judgment Order"), and Memorandum Opinion and Order dated September 6, 2011 [Docket No. 220] ("Fee Order"). These Orders are incorporated by reference.

"exceptional" patent cases. 35 U.S.C. § 285. In determining whether Octane was entitled to attorney's fees under the statute, the Court applied the then-prevailing standard from Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Absent misconduct in litigation or in securing a patent, a case was deemed "exceptional" under Brooks Furniture only if a party can show by clear and convincing evidence "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Id. at 1381. Based on this standard, this Court concluded that Octane had not established by clear and convincing evidence that the litigation was brought in subjective bad faith and was objectively baseless. Mem. Op. & Order, Sept. 6, 2011 [Docket No. 220] ("Fee Order") at 2-8. As a result, this Court held that the case was not exceptional and that an award of attorney's fees was not warranted. Id. at 8. The Federal Circuit affirmed this holding. See Icon Health & Fitness, Inc. v. Octane Fitness, LLC., 496 F. App'x 57, 65 (Fed. Cir. 2012) (reh'g en banc denied, Dec. 27, 2012).

The Supreme Court granted certiorari on the § 285 issue and reversed, rejecting the Brooks Furniture framework as "unduly rigid" and "so demanding that it would appear to render § 285 largely superfluous." Octane, 134 S.Ct. at 1755, 1758. As a result, the Supreme Court announced a new standard for determining whether a case is "exceptional" under § 285 and remanded the case to the Federal Circuit for further proceedings. Id. at 1758. In turn, the Federal Circuit vacated this Court's judgment on the § 285 issue and remanded "for application in the first instance of the new standard whether, under the totality of the circumstances, this case 'stands out from others with respect to the substantive strength' of ICON's litigation position or was litigated in an unreasonable manner." Icon, 576 F. App'x at 1005 (quoting Octane, 134 S.Ct. at 1756).

3

### III.  DISCUSSION

**A.  Renewed Motion for Attorney's Fees**

Section 285 of the Patent Act provides:  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  The "patently clear" text of § 285 "imposes one and only constraint on district courts' discretion to award attorney's fees in patent litigation:  The power is reserved for 'exceptional' cases."  Octane, 134 S.Ct. at 1755–56.

Because the Patent Act does not define "exceptional," it is given its ordinary meaning of "uncommon, rare, or not ordinary."  Id. (quotations omitted).  Thus,

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Id. at 1756.

There is "no precise rule or formula" for determining whether a case is exceptional.  Id.  Instead, district courts are to exercise discretion in considering the non-exclusive list of factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Id. at 1756 n.6.

In addition to adopting a discretionary, flexible approach for determining whether a case is exceptional under § 285, the Supreme Court rejected the clear and convincing standard of evidence required under Brooks Furniture and held instead that a patent litigant may establish entitlement to fees by a preponderance of the evidence.  Id. at 1758.

### 1. Substantive Strength of Litigation Position

Octane argues that this case "stands out" in terms of the weakness of Icon's infringement allegations because Octane's machines did not have any of the patentable features of the '710 patent, and because the '710 patent would have been invalid under Icon's overly broad interpretation of the claims. Icon responds that its litigation position was not unreasonable because the Court found that Octane's devices lacked only two elements of the disputed patent claims, and Octane conceded the presence of one of those elements (a "stroke rail") during a significant portion of the litigation.

"[C]ourts have awarded attorneys' fees under Section 285 where a party advances arguments that are particularly weak and lack support in the record or seek only to re-litigate issues the court has already decided." Intex Recreation Corp. v. Team Worldwide Corp., — F. Supp. 3d —, No. 4-1785, 2015 WL 135532, at *3 (D.D.C. Jan. 9, 2015). As explained below, Icon's arguments with regard to two critical elements of claim 1 (the only independent claim in the '710 patent) were particularly weak because they were wholly at odds with the patent text, prosecution history, and inventor testimony, and would have resulted in impermissibly broad claims.

#### a. Claim 1, Element (d)

A core element of the '710 patent was claim 1(d), which claims:

> means for connecting each stroke rail to the frame such that <u>linear reciprocating displacement</u> of the first end of each stroke rail results in displacement of the second end of each stroke rail in a substantially elliptical path.

'710 patent 7:19-23 (emphasis added). In arguing that Octane's machines met this element, Icon advanced the following non-meritorious arguments.

### i. "Linear reciprocating displacement" does not require movement along a linear path

Octane's accused machines "reciprocate along a slightly arcuate path rather than along a straight path."  Telscher Decl. Ex. U ("Rasty Expert Report") 12.  During claim construction, Icon proposed a construction of "linear reciprocating displacement" that did not require movement along a linear path:

> A change in position from a first point to a second point followed by a change in position from the second point back to the first point, where the change in position from one point to the other results in a net change in position along a line.  <u>Linear reciprocating displacement does not require movement along a linear path.</u>

Br. Supp. Icon's Claim Construction [Docket No. 131] Ex. B ("Disputed Claims Chart") 3 (emphasis added).

Courts have found cases exceptional where patent owners' arguments are inconsistent with the text of their own patent.  <u>See</u> <u>Intex Rec. Corp</u>, 2015 WL 135532, at *3–4 (finding case exceptional and fees warranted where patent owner's litigation position "directly contradicted . . . the patent specification"); <u>Lakim Indus., Inc. v. Linzer Prods. Corp.</u>, No. 12-4976, 2013 WL 1767799, at *5 (C.D. Cal. Apr. 24, 2013) <u>aff'd</u>, 552 F. App'x 989 (Fed. Cir. 2014) (awarding fees where patent owner's argument was "contrary to all the intrinsic evidence").  Additionally, a case may be exceptional where a patent owner's arguments contradict the prosecution history stating why the invention is distinguishable from prior art.  <u>Lugus IP, LLC v. Volvo Car Corp.</u>, No. 12-2906, 2015 WL 1399175, at *5 (D.N.J. March 26, 2015).

Icon's argument that linear reciprocating displacement did not require movement along a linear path was wholly at odds with the text of the '710 patent and reads the word "linear" out of the patent.  The '710 patent's claims and specification make clear that one end of a stroke rail

slides back and forth (i.e., reciprocates) in a linear path by means of a straight "C-channel." See '710 patent 2:12–13, 4:3–17, 5:46–48, 6:14–18; Figs. 1–6. The specification describes a pin with a flared head that is "slidably captured within a C-shaped channel . . . mounted on [the] support stand." '710 patent 4:14–16. The first end of the stroke rail "is thus linearly displaced as [the] pin . . . is slidably moved within the channel." Id. 4:16–17 (emphasis added).

Nothing in the '710 patent's claims, specifications, or drawings indicate that the first end of the stroke rail moves in anything other than a straight line.

Moreover, there is no evidence that the patentees intended the C-channel to be non-linear, or that the first end of the stroke rail be connected to the support stand by anything other than a straight C-channel. To the contrary, the prosecution history shows the patent examiner's allowance of the '710 patent was in part because prior art failed to show an exercise apparatus "having the opposite end [of a stroke rail] connected to the frame for linear reciprocating movement and for producing an elliptical path." Telscher Aff. Ex. T ("Notice of Allowability") ¶ 3 (emphasis added). Icon's own expert similarly testified at his deposition that a reason the linkage system was patentable was that it "convert[s] the reciprocating motion of one end along a linear path to an essentially elliptical path . . . ." Icon, 496 F. App'x at 62 (emphasis added).

### ii. The C-channel and pin are not corresponding structure

Octane's machines do not have a C-channel and pin to attach to the frame, but instead use a "rocker link," which is a lever-based design that moves in an arcuate path. Icon, 496 F. App'x at 60. During claim construction and at summary judgment, Icon argued that the "means for connecting" phrase in claim 1(d) is a means-plus-function limitation where the function is "connecting," and the corresponding structure does not include the C-channel and pin. Disputed

Claims Chart 2.

"[C]orresponding structure must include all structure that actually performs the recited function." Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1119 (Fed. Cir. 2002). Icon's position that the straight C-channel was not required to perform the recited function in claim 1(d) completely ignored the claim language. As the Federal Circuit determined, "the claim language makes clear that the function of the 'means for connecting' is to connect 'each stroke rail to the frame such that linear reciprocating displacement of the first end of each stroke rail results in displacement of the second end of each stroke rail in a substantially elliptical path.'" Icon, 496 F. App'x at 61 (quoting '710 patent 7:19–23) (emphases added). Icon's position was also at odds with the deposition testimony of the patent's inventor, William Dalebout, who stated that if the C-channel were taken out, the mechanism would not work and he would not have a patent. Dalebout Dep. 52:11–53:13.

### iii. Arcuate motion is equivalent to linear motion

At summary judgment, Icon also argued that Octane infringed under the doctrine of equivalents because the slightly arcuate motion of Octane's rocker link produced a substantially equivalent path in much the same way as the linear motion of the C-channel. See Mem. Opp'n Renewed Mot. Attorney's Fees [Docket No. 267] 10. However, the doctrine of equivalents "is not allowed such broad play as to effectively eliminate [an] element in its entirety." DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1016–17 (Fed. Cir. 2006) (quoting Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997)).

Icon's doctrine of equivalents argument was conspicuously flawed because, once again, the argument contradicted the testimony of its own expert, the patent's prosecution history, and

the clear text of the patent itself. As referenced earlier, Icon's expert testified at his deposition that a reason the linkage system was patentable was that it "convert[s] the reciprocating motion of one end <u>along a linear path</u> to [an] essentially elliptical path . . . ." Icon, 496 F. App'x at 62. Additionally, the patent examiner stated that a reason for allowance was that the prior art failed to show an "exercising apparatus comprising . . . a pair of stroke rails each having one end hingedly connected to a respective foot rail and <u>having the opposite end connected to the frame for linear reciprocating movement</u>." Notice of Allowability ¶ 3 (emphasis added). Perhaps most importantly, "[i]f ICON had wanted the claim to cover other types of nonlinear motion, such as an arcuate path, it could have simply omitted the term 'linear' to broaden the claims." Icon, 496 F. App'x at 62–63. It did not, and thus "arcuate motion, at least in this case, is not equivalent to linear motion." Icon, 496 F. App'x at 62.

### b. Claim 1, Element (c)

Even if Icon overcame the significant hurdles in claim 1(d), it still would have had to establish that Octane's machines satisfied claim 1(c), which describes: "a pair of stoke rails each having a first end and an opposing second end, the second end of each stroke rail being hingedly attached to the first end of a corresponding foot rail." '710 patent 7:15–18.

This Court construed "stroke rail" to be: "A linear or curved rail, which may be made to vary in length, extending from a foot rail to a frame on an elliptical machine." Claim Construction Order at 8. Throughout this litigation, Icon argued a "stroke rail," could consist of an unlimited combination of unnamed parts. See Br. Supp. Icon's Claim Construction 13-15.[2]

---

[2] The page number references for the cited document are to the page numbers appearing at the bottom of the page and not to the page numbers appearing in the CM/ECF citation at the top of the page.

This broad construction is highly unreasonable in that it excludes other inventors from the use of infinite combinations of parts that link a foot rail and a frame on an elliptical machine.[3]

### c. Arguments Exceptionally Weak

Icon's litigation position on the critical elements of claim 1 of the '710 patent depended on accepting the following highly questionable arguments: "linear reciprocating displacement" does not require movement along a linear path; the C-channel and pin are not part of the corresponding structure; arcuate motion produced by a lever-based design is equivalent to linear motion produced by a C-channel design; and a "stroke rail" can consist of a limitless number of parts.

In comparing this case to the many patent cases over which this Court has presided during the past 22 years as a federal judge, Icon's litigation position stands out as a particularly and unusually weak case on the merits. The arguments advanced by Icon bore no relation to what the '710 patent disclosed and covered. The claim language, specification, prosecution history, inventor testimony, and Icon's own expert testimony posed major obstacles to Icon's success on the merits. Icon must have known that the odds of winning this lawsuit were very slim.

This Court, when first ruling on the § 285 issue, did state that the conclusions during

---

[3] Icon initially included only Octane's Q47 model in this lawsuit; the Complaint was later amended to add Octane's Q45 model to the case. Before Icon added the Q45 model to the suit, Octane admitted that the Q47 model met the stroke rail limitation in claim 1(c), because the Q47 model had an actuator casting (what Icon was calling a "stroke rail") that was connected to the foot rail. Def.'s Mem. Supp. Renewed Mot. Attorney's Fees [Docket No. 261] 20 n.7. However, once Icon added the Q45 model, which has an actuator casting with a motor that is attached to the foot rail with an integrated screw, Octane realized that Icon's position was that a "stroke rail" could consist of a limitless number of unrelated parts. As a result, Octane withdrew its concession.

claim construction and at summary judgment were not easily reached. However, even extraordinarily thin arguments require a court to expend considerable effort in parsing through highly technical and abstract language before claims can be construed and infringement determinations can be made. Therefore, although Octane, in its original motion for attorney's fees, did not establish by clear and convincing evidence that Icon's claims were objectively baseless, it has shown by a preponderance of the evidence that Icon's litigation position was exceptionally weak.

### 2. Unreasonable Manner of Litigation

Octane argues that this lawsuit is also exceptional in that it was contrived by industry giant Icon to punish Octane for its success in the market and to bully Octane into paying royalties to which Icon was not entitled. The following circumstances are relevant to the inquiry of whether Icon litigated this case in an exceptionally unreasonable manner.

#### a. Litigation Tactics Designed to Increase Costs

When Icon initially file this case, it named two defendants: Octane and a single Octane distributor, Nellie's Exercise Equipment, Inc. ("Nellie's"). Nellie's is a California business that sells exercise machines. See Civil Mins. [Docket No. 57] Attach. 51 at 1. By naming Nellie's as a defendant, Icon was able to file the lawsuit in California, a venue known for heightened litigation costs. Octane is a Minnesota company with only two employees in California; both are sales people who work out of their homes. Id. at 5. Icon's principal place of business is in Utah. The claims against Nellie's were premised on alleged infringement of U.S. Patent No. 5,104,120 (the "'120 patent"), which was not limited to elliptical machines but instead described a method for adjusting the resistance of an exercise machine to vary the intensity of a workout. Id. at 3.

On November 3, 2008, the district court in California determined that Icon's claims against Nellie's, a distributor and not a manufacturer, were peripheral to Icon's claims against Octane.  See Icon Health & Fitness Inc. v. Octane Fitness LLC, Civil No. 8-437 (C.D. Cal. 2008).  The California district court further found that the main issue in the case—whether the machines designed by Octane infringe Icon's patents—was to be resolved between the two manufacturers.  Thus, the California district court severed Nellie's from the Octane case.  Id. at 3.

The California district court then transferred the case against Octane to Minnesota, finding that Minnesota was a more convenient forum, the relevant witnesses and pertinent documents were in Minnesota, and the bulk of the suit bore little relation to California.  Id. at 5; see also Stipulation for Entry of J. [Docket No. 189] ¶ 4 (stipulating that the California district court transferred the case between Icon and Octane to this Court and left the case between Icon and Nellie's in California).  A mere two months after the initial pretrial scheduling conference was held in this district, and before Icon was required to provide Octane with a claim chart showing the bases for its infringement contentions, Icon agreed to dismiss the allegations relating to the '120 patent.  See Stipulation for Dismissal [Docket No. 77].

The inclusion of a peripheral party to establish venue in an inconvenient and high-cost district—particularly where the claim that supposedly provided the basis for including the peripheral party was voluntarily dismissed with prejudice shortly after the action was transferred—is highly suspicious.  On the present record, this Court finds it more likely than not that the reason for including Nellie's and the '120 patent in this litigation was to increase litigation costs to Octane.

12

### b. No Articulated Pre-Filing Infringement Analysis

In opposing Octane's renewed motion for attorney's fees, Icon produced a declaration by Icon's general counsel, Everett Smith, that provided limited information about a pre-suit analysis of Octane's Q47 machine and Icon's patents that Icon performed before it filed suit against Octane. See Smith Decl. [Docket No. 268]. Smith avers that Icon's outside patent counsel, along with an unnamed expert retained by Icon, obtained an Octane elliptical machine and expended over 270 hours and incurred over $80,000 in fees and costs in conducting a pre-suit infringement investigation. Id. ¶¶ 3–5. Smith further states that Icon's outside counsel and expert explained to him how Octane's machine infringed the '710 patent, and Smith believed the analysis "to be a reasonable and legitimate basis on which to file a complaint against Octane." Id. ¶¶ 6–7.

Icon has produced no documentary evidence of any written communications relating to the substantial investigation and pre-suit analysis. Icon contends its counsel's communications about the results of the investigation and infringement analysis are protected by the attorney-client privilege. However, each party in this case is required to maintain a privilege log that lists and describes documents withheld on the basis of privilege. Pretrial Scheduling Order [Docket No. 75] 7. Icon's privilege log does not reflect written communications or reports concerning the substantial pre-suit investigation. Def.'s Mem. Supp. Renewed Mot. 1. Smith has testified in a deposition that outside patent counsel orally shared the results of the investigation and infringement analysis with him: "They [outside counsel] talked to me and discussed claims about the case and what they are going to do, etc., and I say [sic] okay. But they – I don't know that they ever said, hey, this is what we're doing right here. You know, and gave me a document

13

to read and say, are you okay with this? . . . . They didn't do it in this case." Telscher Decl. Ex. J ("Smith Decl.") 96:12–18.

Smith's declaration is troubling for a number of reasons. First, the absence of written documents relating to such a lengthy and expensive pre-suit investigation suggests that the results of the investigation showed exceptionally weak bases for alleging infringement. Second, the extensive amount of time and money spent on the investigation is perplexing given that the lawsuit involves only one independent claim (claim 1). These contentions suggest Icon was scouring its patent portfolio in search of a basis for bringing a lawsuit against Octane. Third, Smith does not provide the name or qualifications of the expert retained by Icon to assist in the pre-suit investigation, and it is unclear from the declaration whether the expert who was retained for the pre-suit investigation is the same person as the expert who was retained for the litigation.

Most telling is that Smith does not explain why he or Icon's attorneys believed the pre-suit analysis to be reasonable. "A patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." Source Vagabond Sys. Ltd. v. Hydrapak, Inc., 753 F.3d 1291, 1302 (Fed. Cir. 2014) (quotations omitted) (holding in Rule 11 context that a declarant's conclusory statements that a pre-suit infringement analysis had been performed was not evidence to support a reasonable belief by plaintiff that it had a meritorious infringement claim). The absence of a pre-filing analysis, when combined with Icon's exceptionally weak litigation position, leads to the inference that the pre-filing investigation resulted in a conclusion that probable success on the merits was remote.[4]

---

[4] Icon argues the pre-filing communications are protected by the attorney-client privilege. Icon, however, has not attempted to waive privilege or submit any redacted documentation that

### c. Emails Reflect Improper Motivation

In late August 2008, approximately five months after this case was filed, Pat McGinnis, who serves as Vice President of Global Sales for FreeMotion (an Icon subsidiary), sent the following email to two other FreeMotion employees: "We are suing Octane. Not only are we coming out with a great product to go after them, but throwing a lawsuit on top of that." Telscher Decl. Ex. A at 2. The next day, McGinnis sent a second email to one of the two employees. Id. at 1. The second email states: "ICON Health & Fitness does not mess around with this. They are going to end up paying royalty plus compensation. Funny thing is – this patent is over 10 years old!" Id. In September 2009, McGinnis sent another email relating to the lawsuit that stated: "Yes. Old patent we had for a long time that was sitting on the shelf. They are just looking for royalties." Telscher Decl. Ex. F ("McGinnis Dep.") 65:2-5.

When this Court originally ruled on Octane's initial motion for attorney's fees, the Court viewed these emails as "stray comments by employees with no demonstrated connection to the lawsuit" and concluded that "[a] company salesman's opinion of a lawsuit does not tend to prove that the company's leadership and counsel pursued the lawsuit in bad faith." Id. at 8.

However, the record has now been supplemented to give fuller context to these emails. McGinnis was deposed on how he learned of the specifics concerning the age of the patent and the goal of the lawsuit. McGinnis testified that he learned about the lawsuit from an August 22, 2008 news article. McGinnis Dep. 67:5–69:7. However, the article did not include details about

---

substantiates its claimed infringement determinations. Icon's failure to avail itself of any available means to disclose relevant material to the Court while protecting sensitive information belies the depth and conclusion of its pre-suit infringement analysis.

15

the patent's age or that Icon's goal in suing Octane was to collect royalties. When pressed on where he learned this information, McGinnis stated he could not remember. Id. 65:14–66:5.

McGinnis' knowledge that the '710 patent was an old patent that was "sitting on the shelf" and that Icon was seeking royalties are not the types of details generally known by company sales employees. McGinnis' knowledge of this these items suggests they were shared with him by a member of Icon's legal department or upper management.

The record regarding McGinnis' emails is also supplemented by the declaration of Icon's in-house counsel, Smith, who avers: "Pat McGinnis, who was a Vice President of Global Sales at Free Motion in 2008, had no part in ICON's decision to bring a lawsuit for patent infringement against Octane." Smith Decl. ¶ 9. However, the issue is not whether McGinnis was involved in the decision to bring the lawsuit. Rather, the issue is how McGinnis learned of the specific legal facts in the lawsuit. Only McGinnis and Icon know the answer to that question, and the record on the issue is silent. Had Smith not shared his views of the lawsuit with McGinnis, he had the opportunity to say so in his declaration, but did not.

The additional evidence of the McGinnis deposition and the Smith declaration, when combined with the emails reflecting McGinnis' knowledge of the lawsuit that were not widely known make it more likely than not that McGinnis' email comments reflected the views of those in Icon's management who were involved in the decision to sue Octane.

### d. Uncommercialized Patent

As described by McGinnis in the emails, the '710 patent was an old patent "sitting on the shelf" and had never been commercialized. Thus, Icon had little to lose by injecting the validity of the '710 patent into a lawsuit. Although this Court determined earlier that the non-

commercialization of the '710 patent was not relevant to a bad faith analysis under the Brooks Furniture framework, the new standard announced in Octane allows a court to consider whether there is a "need . . . to advance considerations of compensation and deterrence." Octane, 134 S.Ct. at 1756 n.6. Here, the non-commercialization of the '710 patent is relevant to whether awarding fees to Octane is necessary to deter Icon from future attempts to extract royalties to which it is not entitled from a competitor who might rather settle a meritless patent infringement suit than pay the high cost to defend it.

### e. Totality of Circumstances

Viewed individually, each of these circumstances might not suffice to make the case exceptional. However, when viewed cumulatively, these circumstances demonstrate that the case was litigated in a manner that stands out from more routine patent cases. The preponderance of the evidence shows that Icon spent substantial time and expense searching its patent portfolio for a lawsuit to "throw" at Octane, and ultimately landed on a 10-year old patent that was never commercialized and was merely "sitting on the shelf." Additionally, Icon employed litigation tactics designed to accelerate Octane's litigation costs in an effort to force Octane to settle rather than defend the suit. Icon's motive and behavior in litigating this lawsuit were "'uncommon,' 'rare,' [and] 'not ordinary.'" Octane, 134 S.Ct. at 1756. The Court thus concludes that the manner of litigation was exceptionally unreasonable and that the imposition of fees is appropriate.

### 3. Reasonableness of Fees

Having determined that this case is exceptional and that fees are warranted under § 285, the Court must determine the amount of the award. Eon-Net v. Flagstar Bancorp, 653 F.3d 1314,

1323–24 (Fed. Cir. 2011). Octane contends it has incurred nearly $2 million in connection with this case, including appeals, and requests that it be awarded all of its attorney's fees. However, Octane has not provided evidence to establish the amount of its attorney's fees and reasonableness of the fees.

The type of evidence typically analyzed in determining a reasonable attorney's fee includes: "hourly time records, full expense statements, documentation of attorney hourly billing rates in the community for the particular type of work involved, the attorney's particular skills and experience, and detailed billing records or client's actual bills showing tasks performed in connection with the litigation." Junker v. Eddings, 396 F.3d 1359, 1366 (Fed. Cir. 2005). Therefore, Octane shall file documentation of attorney's fees and shall include itemized billing statements, expense reports, documentation of local billing rates for the type of work involved, and other evidence demonstrating the amount of attorney's fees and costs reasonably incurred by Octane in litigating this case.

## B. Motion to Strike

Octane moves to strike portions of the Smith Declaration relating to Icon's pre-suit investigation or, alternatively, to reopen discovery relating to issues raised in the Smith Declaration. The motion to strike is rendered moot by the Court's conclusion that this is an exceptional case that warrants an award of attorney's fees.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Defendant Octane Fitness, LLC's Renewed Motion for Attorney's Fees and Costs [Docket No. 260] is **GRANTED** to the extent that the Motion requests a finding that this case is exceptional.

2.  Octane's Motion to Strike or, in the Alternative, Motion to Reopen Discovery [Docket No. 272] is **DENIED** as moot.

3.  Octane shall file documentation in support of its request for reasonable attorney's fees on or before July 15, 2015.  The documentation shall include itemized billing statements, expense reports, documentation of local billing rates for the type of work involved, and other evidence demonstrating the amount of attorney's fees and costs reasonably incurred by Octane in litigating this case.  Icon may file a response on or before July 22, 2015.  The Court will issue an order awarding reasonable attorney's fees without further oral argument.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 1, 2015.